**ROBINSON et al. v. WAMPLER.**

**No. 5779.**

Court of Civil Appeals of Texas. Amarillo.
May 12, 1947.

W. H. Barnes, of Terrell, for appellants.
A. G. Henry, of Kaufman, for appellee.

PITTS, Chief Justice.

This is a habeas corpus proceeding instituted by Joseph M. Wampler. The application for the writ states that Larry Joe Wampler, a boy three years old, and Sandra Ruth Wampler, a girl two years old, are being illegally restrained of their liberty by Willie Robinson and Goldie Robinson. Petitioner prays for a hearing and that their liberty be restored. There were no other pleadings on the part of the petitioner. Respondents answered with a general denial and alleged that they were the maternal grandparents of the children; that their mother was dead and that respondents have had the custody, care and responsibilities of the said children most of their lives, have established a good home for them and given them the proper care and attention during the long illness of their mother; that they have great affection for the children and the children do for them; that it will be detrimental to the children to take them away from respondents during their tender years; that before the children's mother died she gave the children to respondents and requested that they keep and care for them; that after their mother died petitioner, the father of the children, gave them to respondents and stated that they may keep them; that respondents are the proper persons to have the care, custody and control of the children while petitioner has failed and refused to care for them and that he is not a proper person to have their care, custody and control but is unfit for such responsibility.

The trial court heard the case without the aid of a jury on September 13, 1946, and awarded the custody of the children to

petitioner from which judgment an appeal was perfected to the Court of Civil Appeals of the Fifth Supreme Judicial District and the same was transferred to this Court by the Supreme Court. Respondents filed a supersedeas bond and have the custody of the children pending this appeal.

In its findings and conclusions duly filed the trial court found that the children have resided with respondents, the maternal grandparents, most of their lives; that they have been well treated and well cared for by respondents who are affectionate toward the children and the children are affectionate toward respondents, who have treated the children as though they were their own children; that it is the intention of petitioner if the children are awarded to him to reside with his parents, the paternal grandparents of the children, Frank Wampler and wife; that the paternal grandparents are in good health, own a comfortable home with adequate conveniences and proper surroundings for the care and comforts of the children; that they are willing and ready to assist petitioner in caring for the children and that they are morally fit and proper persons for such responsibility; that petitioner's income is more than $200. per month and that he is financially able to care for the children; that petitioner served in the army from February 18, 1943, until May 11, 1945, and contributed to the support of the children while he was in the army and since his return from the army, except for five or six weeks since his return; that petitioner was "presently conducting himself in a proper manner" and was then "a fit and proper person to have custody of his said minor children". Finally the trial court found "the best interests of the children would be served by their being awarded to the custody of the said Frank Wampler and his wife", the paternal grandparents of the children. Then the trial court concluded as a matter of law that under the facts and circumstances in the case it had no authority to divest the father of the custody of his minor children and to award them to other persons and the children were therefore awarded to their father, the petitioner.

In three points of error respondents challenge a part of the trial court's findings and its conclusion of law and contend that the evidence does not support the trial court's finding upon which it based the award. Respondents made a logical argument before this Court in support of their contentions made in their brief while petitioner made no appearance in this Court; nor has he furnished a brief in support of his claims made in the trial court. However, the failure of petitioner to make an appearance or file a brief in this Court will not prejudice the rights and best interests of the minor children.

We sustain respondents' first point of error to the effect that the trial court erred in holding that it had no authority under the facts and circumstances to divest the father of the custody of the children and to award them to other persons. It has been many times held that the best interests of the children is the paramount issue in a case such as this. What is best for the parent is not the paramount issue, however, we recognize the rule of law that usually gives the natural parents the right to the custody and control of their minor children and the surviving parent usually has that right when the other parent is dead. Such is generally the rule, everything else being equal, but the right of the natural parents to the custody and control of their minor children is not absolute. Such right is subject to judicial control when the best interests of the children demands it in cases where everything else is not equal and such right must yield to the best interests of the children when such right is not consistent with the children's best interests. The desire of the parent is not controlling in such a case but the best interests of the children is controlling when there is a conflict between the desire of the parent and the best interests of the children. Davis v. Sears, Tex.Com.App., 35 S.W.2d 99, and other authorities there cited. In the instant case the trial court found that the petitioner was then conducting himself in a proper manner and was then a fit and proper person to have the custody of the children but it did not find that it would be for the best interests of the children that they be awarded to their father, yet they were so awarded. It found that the children's best

interests would be served by awarding them to the paternal grandparents yet they were not awarded to them. The trial court did not only have authority to award the children to somebody other than the father, but under its own findings it was the duty of the trial court to award the children to the available persons in whose custody their best interests would be served. The trial court, as shown by its conclusion of law, must have proceeded upon the theory that the father was entitled to the custody of his children unless respondents established by clear and satisfactory evidence that the father was an improper person to have their custody. That placed a greater burden on respondents than the law requires. In order to meet the burden of proof required of respondents here by law they need only to establish the fact that it will be for the best interests of the children that they remain with respondents. Parents have no rights superior to the welfare of their children and a parent is not as a matter of law entitled to the custody of his minor children even though he is a suitable person to have their custody. Miller v. Banks, Tex.Civ.App., 280 S.W. 301; Cecacci v. Martelli, Tex.Civ.App., 235 S.W. 951; Dunn v. Jackson, Tex.Com.App., 231 S.W. 351.

■ It is clear from the authorities cited that the trial court was in error in concluding that it did not have the authority under the law to award the minor children to persons other than the father when it found as a matter of fact that their best interests would be served by awarding them to their paternal grandparents. The Commission of Appeals held in the case of Hubb Diggs Co. v. Bell, 116 Tex. 427, 293 S.W. 808, 810, that "An erroneous holding of the trial court on a question of law is an abuse of judicial discretion and should be corrected on appeal." It clearly appears to us from the record that error has been committed by the trial court in its only conclusion of law filed and respondents' point of error number one is sustained.

■ Under the law in a case such as this respondents are charged with the duty of pleading and proving by a preponderance of the evidence that it will be for the best interests of the children that they be left in the custody of respondents. They are not required, however, to prove that the father is not a fit and proper person to have their custody. Dunn v. Jackson, supra, and Davis v. Sears, supra. Yet, respondents pleaded and are seeking to show in presenting their second and third points of error that the evidence clearly shows that it will be for the best interests of the children to leave them in the custody of respondents and that the evidence does not support the findings of the trial court to the effect that petitioner was a fit and proper person to have the custody of the children or that their best interests would be served by awarding them to Frank Wampler and wife, the paternal grandparents.

The record shows that Mrs. Frank Wampler did not attend the trial; nor did she give any testimony at the trial. Frank Wampler testified briefly that he was constable at Scurry, Texas; that he lived in a five room house with conveniences and facilities suitable for the children; that he would like to have his son and the children live with him; that the children had stayed with them five weeks on one occasion; that the children will be cared for and get proper attention and food if they live with him; that he is 74 years old and his wife is 65 years old and they are both active and in good health; that he had not had the care and responsibility of any small children since his son, petitioner, was a child; that since April his son, petitioner, has had a good job and conducted himself properly.

Joseph M. Wampler, the petitioner, testified in part to the effect that on his return from the army his wife and the children were living with his wife's parents, respondents; that he lived there with them for a time; that on his return from the army he found his wife in poor health and in bed; that he took her to a doctor who said she had a brain tumor; that he had her further examined a few months later and found she had the mind of a six or seven year old child; that she died on August 14, 1946; that if the children are awarded to him it is his intention to take them and live with his parents who are physically able to assist him in caring for them. On

cross-examination petitioner further testified that he knew his wife was ill before he got out of the army and his wife's parents, the respondents, helped to get him out of the Service on the promise that he would care for his wife and children and that he was finally released for that reason; that his family had lived with respondents during all of the time he was in the Service; that he lived there with them until November 1, 1945, when he moved away leaving his family with respondents because his wife "wasn't fit to be a wife, she was only a child herself, and the children wasn't getting the proper care"; that in January he took his wife and the children to the home of his parents where they remained for five or six weeks, after which he returned them to the home of respondents where he left them and did not live with them or be around them any more; that a few months after he returned from the Service he made some inquiries about getting a divorce and discussed the matter with his wife and told her he did not love her and did not want to live with her any more but that she could keep the children and he would support them; that she was not capable of caring for the children but her mother was caring for them; that during the time he lived with respondents and his family he drank whiskey in the presence of his children and got drunk in their presence several times; that he had paid several fines in Terrell for being drunk; that he had been in jail several times; that on one occasion he paid a fine for slapping a young lady at the bus station because she would not go with him; that he has been seen on the streets of Terrell "all hours of the night drinking and carousing around"; that respondents loved the children, have had the full responsibility in caring for them most all of their lives and have cared for them as if they were their own children and that the children call respondents "papa and mamma". On redirect examination he testified that he had quit drinking and was then conducting himself properly and that he did not intend to drink any more. Two peace officers testified also about petitioner's misconduct, the times he had been arrested, paid fines, served jail sentences, as well as the times he had been seen on the streets all hours of the night "drinking and carousing around". Petitioner was recalled for further cross-examination just before the evidence closed. He testified that he, his father and the children had been closely associated together all day in the court room, during a part of which time they were around a table within three feet of each other but that he had not spoken to or touched either child and that he had not seen his father touch either of them or speak to either of them and that the little girl did not know him. Respondents both testified fully as to all of the facts, their relationship to the children, the constant care and attention they have given them and their love for them; that their mother asked them to keep and care for the children before her death and that petitioner had told them after the mother's death that he wanted them to keep the children; that they wanted the children and would care for them without any help, support or money from petitioner but he could visit them as often as he pleased. Several neighbors who testified they were parents of children, likewise testified fully as to the care, attention and parental instruction respondents have given the children. The testimony overwhelmingly supports the finding of the trial court to the effect that the children have lived with respondents most of their lives during which time they have been properly cared for, clothed, fed and given the advantages to which they were entitled; that there was a mutual affection between the children and respondents who have treated the children as though they were their own children.

The testimony is undisputed that respondents are giving the children all the attention that their best interests would require. Respondents and their neighbors testified that the children were kept clean, well dressed, properly fed, and cared for and were well treated, all of which is consistent with the trial court's findings to that effect. The trial court found that a mutual affection exists between the children and the respondents but it does not find that any such affection exists between the children and their father or between them and their paternal grandparents and the evidence did not show

that such existed. On the contrary the evidence shows that the children had been associated with their father and paternal grandparents very little and that they were almost strangers to them. The evidence further shows that respondents, Willie Robinson, was 50 years old and his wife was 45 years old while the paternal grandfather was 74 years old and his wife was 65 years old. The respondents were still caring for these children of tender years satisfactorily while the paternal grandparents have not had the care and responsibility of small children since petitioner was a small child. Nobody asked that the children be given to the paternal grandparents and nobody made any contention that such should be done or offered any evidence to the effect that the best interests of the children would be served by awarding them to the paternal grandparents. The paternal grandmother did not give any testimony nor ask for the children and there is no evidence that she has agreed to help care for them. The paternal grandfather said if the children were awarded to petitioner he would help to care for them but he did not ask for them.

Under the judgment of the trial court the father would have complete custody and control of the children. He has not been directed by the trial court to keep the children with his parents or at any other particular place but he would be free to take them wherever he pleased. He was not married, had no fixed home, and holds no future promise for the security of the children or for their best interests. But suppose he did take them to live with his parents. These children of tender years would then be pulled from the arms of respondents whom they know as "papa and mamma", those who have loved them, cared for them and manifested an interest in their welfare all of their lives; they would be taken from the only home they have ever known and placed in a strange home among strange people who have not asked for them and who have not manifested any particular desire to have them. The judgment of the trial court does not place any responsibility upon the paternal grandparents if the children should go to live with them. They could keep and care for the children only at the will of petitioner who could move them away at any time and take them to any other place he may choose, or he could leave them with his parents and move away himself. We believe that the past conduct of a person is a good yard stick by which his future conduct may be measured. The record reveals and petitioner admits having been drunk many times even in the presence of his family, having paid fines, been in jail, roamed about the streets "drinking and carousing" during the nighttime while his wife was quite ill and respondents were caring for his children. In view of his past record his statement that he had quit drinking and was then living a proper kind of life should be cautiously considered along with all the other testimony. It is quite clear from the testimony of petitioner that he has not manifested proper concern for his children but on the contrary he has manifested little interest in them and their welfare.

 In determining the paramount issue of what will be for the best interests of these children we should consider the relationship existing between the children and the parties seeking their custody, the character, health and relative ages of the parties who will have the responsibilities of caring for them and training them in the future, the interest the parties have shown in the children in the past and will probably take in them in the future, the abilities of the parties, respectively, to make the children secure. However, the trial court has found that petitioner is financially able to provide means for the support, maintenance, care and education of his children and the evidence supports such findings. May it be well understood that it is the legal duty of the father to furnish the funds for the support of his children regardless of who may have custody of them. it is our opinion, viewing the evidence in the most favorable light and particularly that given by petitioner, his father, and disinterested parties, that the evidence does not support the finding of the trial court to the effect that the best interests of the children will be served by awarding their custody to Frank Wampler and his wife, and that

the trial court abused its discretion in so finding. In addition to the authorities already cited we cite the additional case of Williams v. Perry, Tex.Civ.App., 40 S.W.2d 929, affirmed Tex.Com.App., 58 S.W.2d 31. Under the authorities already cited it is our opinion further that neither the evidence nor the law supports the findings and conclusions of the trial court to the effect that the children should be awarded to their father. Under the findings of the trial court, respondents are fit and proper persons to have the custody of the children. The trial court found nothing wrong with the kind of care and treatment respondents have been giving the children. It approves such care and treatment as they have been receiving most all of their lives by respondents. An overwhelming preponderance of the evidence shows conclusively that it will be for the best interests of the children if they are awarded to and left with respondents. Under such circumstances it is our duty to reverse the judgment of the trial court and to render judgment holding that the children are not being illegally restrained by respondents and awarding the custody and control of the children to respondents, and it is so ordered.