**DALLAS TITLE & GUARANTY CO. v. BOARD OF INS. COM'RS et al.**

**No. 9833.**

Court of Civil Appeals of Texas. Austin.

Oct. 19, 1949.

Rehearing Denied Nov. 9, 1949.

Hamilton, Edwards & Shults, of Dallas, Blair & Randle, of Austin, for appellant.

Price Daniel, Attorney General of Texas, and C. K. Richards and W. V. Geppert, Assistant Attorneys General, all of Austin, for appellees.

HUGHES, Justice.

Since all parties have appealed we will refer to the Dallas Title and Guaranty Company, plaintiff below, as the Title Company and to the Board of Insurance Commissioners and other state officers sued in their official capacities as the State.

We will first discuss and dispose of the appeal taken by the Title Company.

Suit was properly brought by the Title Company to recover premium taxes paid by it under written protest on the title insurance premiums collected by the Title Company in Texas during the years 1945, 1946 and 1948.

The Title Company alleged, and now contends, that it is, and was during the specified years, a domestic title insurance corporation operating under art. 1302a, Vernon's Ann.Civ.St. (Guaranty Title Act of 1929), and that under Sec. 7 thereof it is exempt from the payment of premium taxes and liable only for the payment of franchise taxes.

The State's theory is that Sec. 7 of art. 1302a was repealed by the 49th Legislature in 1945, when it amended art. 7064, V.A.C.S., and that under such Article as amended the Title Company was required to pay the premium taxes involved.

Judgment of the trial court was that the Title Company take nothing by its suit and declaring that: "* * * Section 7 of Article 1302a, Vernon's Annotated Civil Statutes, providing that the General laws are applicable to the payment of franchise taxes by domestic corporations operating under the provisions of Article 1302a and that such domestic corporations shall not be required to pay gross premium taxes, was repealed by the enactment of Section 1, Chapter 341, Acts of the 49th Legislature, Regular Session, 1945, page 574, which amended Article 7064, Revised Civil Statutes of Texas, 1925, as amended, * * *."

The only question, then, for our decision is whether or not the 1945 amendment to art. 7064 effected a repeal of Sec. 7 of art. 1302a.

We are of the opinion that it did. Sec. 7 of art. 1302a provides: "The General Laws applicable to payment of filing fees and franchise taxes of corporations having a capital stock are hereby made applicable to corporations coming under the provisions of this Act. Domestic corporations operating under this Law shall not be required to pay premium taxes."

Art. 7064, as amended by the Acts of 1945, 49th Leg., p. 574, Ch. 341, Sec. 1, levies a tax on the gross premiums collected by certain insurance companies, and we quote the portions of such statute which are pertinent to this controversy:

"Every insurance corporation, Lloyd's or reciprocals, and any other organization or concern transacting the business of * * * title * * * or any other kind or character of insurance business * * * at the time of filing its annual statement, shall report to the Board of Insurance Commissioners the gross amount of premiums

received upon property located in this State or on risks located in this State during the preceding year, and each of such insurance carriers shall pay an annual tax upon such gross premium receipts of * * * 3 5%. * * *

"No occupation tax shall be levied on insurance companies herein subjected to the gross premium receipt tax by any county, city or town. * * * The taxes aforesaid shall constitute all taxes collectable under the laws of this State against any such insurance carriers * * *.

"No other tax shall be levied or collected from any insurance carrier by the state, county, city or any town, but this law shall not be construed to prohibit the levy and collection of state, county and municipal taxes upon the real and personal property of such carrier. * * * This Act shall be cumulative of all other laws and shall repeal Article 4758, Revised Civil Statutes of 1925, as amended, and all other laws only in so far as they levy any tax on any of the organizations affected by this Act or otherwise conflict with this Act, except as provided above."

Art. 4758, expressly repealed by the 1925 amendment of art. 7064, provided for retaliation, under certain circumstances, against foreign insurance companies doing business in this state.

We are aware of the rule that repeal of statutes by implication is not favored. The repeal effected here, however, is not wholly dependent upon the implied intention of the Legislature. The Legislature expressed a plain intention not only to repeal all laws in conflict with the amendment of 1945, but to repeal " * * * all other laws * * * in so far as they levy any tax on any of the organizations affected by this Act. * * * ."

In view of this language it could hardly be said that the Legislature did not express an intention to repeal all other tax laws which affected the organizations named in the Act. This is not repeal by implication. It is an express general repeal of all laws levying taxes on these organizations. City of Fort Worth v. State, Tex.Civ.App., Fort Worth, 186 S.W.2d 323, Writ Ref. W. M.

Furthermore, the provisions of Sec. 7, art. 1302a, are inconsistent with and repugnant to the provisions of the 1945 amendment to art. 7064. They both relate to the same subject in that they both levy taxes on title insurance corporations, which taxes are entirely different in character and the later statute, 7064, repeatedly provides that the taxes levied by it shall be the only state, county or municipal tax to which such corporations shall be subject.[1]

This repugnancy is patent and, when considered with the clause repealing all other statutes levying taxes on such a corporation, the conclusion is inevitable that Sec. 7 of art. 1302a has been repealed.

In Gaddis v. Terrell, 101 Tex. 574, 110 S.W. 429, the court said: "* * * But since the effect of a general provision repealing conflicting laws evinces that the Legislature had in mind that something was to be repealed, the 'courts will be less inclined against recognizing repugnancy in applying such statutes'."

The inclination above referred to is much less here because the Legislature not only repealed all conflicting laws but expressly repealed all laws which levied taxes on a title insurance corporation. Sec. 7, art. 1302a, was such a law and, in our opinion, is necessarily repugnant to present art. 7064 and hence was repealed by its adoption.

The Title Company was, therefore, subject to the taxes prescribed by art. 7064 for the years 1945, 1946 and 1948, and the trial court was correct in so holding.

The State's appeal results from an adverse judgment on its cross action against the Title Company to recover gross premium taxes levied by art. 7064, R.C.S. 1925, as amended, on both the surety and guaranty as well as the title insurance business done by the Title Company for the years 1929 to 1945, inclusive. During these years the Title Company paid franchise taxes under the provisions of Sec. 7, art. 1302a, V.A.C.S.; and art. 7084, R.C.S. 1925, as amended.

1. Certain exceptions are provided which are unimportant here.

The trial court held that the Title Company was exempted from the payment of all premium taxes under and subsequent to the enactment of Sec. 7, art. 1302a, V.A.C.S., Title Guaranty Act of 1929 and prior to the 1945 amendment to art. 7064, V.A.C.S., which effected a repeal of said Sec. 7.

The Title Guaranty Act of 1929, art. 1302a, V.A.C.S., provides in Sec. 3 that all corporations including those created under certain designated laws as well as those created under "* * * any other law insofar as the business of either may be a title insurance business * * * " should be under the supervision and control of the Board of Insurance Commissioners of Texas and Sec. 23 of the Act gave existing companies six months within which to comply with its requirements.

The Title Company duly complied with all requirements of the Title Guaranty Act.

Sec. 7 of the Act provides, in part, that, "Domestic corporations operating under this Law shall not be required to pay premium taxes."

The question for decision is whether or not the Title Company was a domestic corporation operating under the Guaranty Title Act of 1929 from 1929 to 1945.

The Title Company was a domestic corporation but the State contends that it never was and never became a title insurance company so as to come within the provisions of the Guaranty Title Act of 1929, but that it always was and still remains a fidelity, guaranty and surety insurance company only.

The historical background of the Title Company and relevant laws must be examined for a proper determination of the question at issue.

The Title Company was incorporated August 3, 1906. The purpose clause, as contained in its charter, reads: "To act as surety and guarantor of the fidelity of employees, trustees, executors, administrators, guardians or others appointed to or assuming the performance of any trust, public or private, under contract between private individuals or corporations; also on any bond or bonds that may be required to be filed in any judicial proceeding; also to guarantee any contract or undertaking between individuals, or between private corporations, or between individuals, or private corporations and the state and municipal corporations or counties, or between private corporations and individuals, and to insure title to real estate. And it shall do business under Chapter 165 of the acts of the Twenty-fifth Legislature [Vernon's Ann.Civ.St. art. 4970 et seq.] within the State of Texas alone." (Italics supplied.)

The Attorney General of Texas, who at the time was authorized to issue certificates of incorporation to insurance companies. art. 3028, R.S.1895, Vernon's Ann.Civ.St. art. 4699, issued the following certificate to the Title Company (the name of the company having since been changed):

"I hereby Certify that the attached original Articles of incorporation of the Title and Guaranty Company are submitted to me on the 3rd day of August 1906 and that having carefully examined the same I find them in accordance with the provisions of Chapter One Title Fifty-eight of the Revised Statutes of Texas, and not in conflict with the laws of the United States or of the State of Texas.

"(Signed) R. V. Davidson,
"Attorney General."

On August 2, 1906, the day before the issuance of the above certificate, Attorney General Davidson wrote an opinion to W. J. Clay, Commissioner of Insurance of Texas, concerning the incorporation of the Title Company, and from which we quote:

"I am in receipt of your letter dated 7/8/06 to which is attached a communication from J. H. Pickrell and others, relative to the incorporation of a surety and guaranty company, under the Revised Statutes, Art. 642, Subdivision 37, as amended by Acts 1903, page 197, to be regulated by the provisions of Chapter 165 of the Acts of the Twenty-fifth Legislature (1897), submitting in substance the following questions, viz.:

"1. Will such company constitute an insurance company within the meaning of Revised Statutes Title 58?

"I answer this question affirmatively. People [ex. rel. Kasson] v. Ros[e], Sec-

retary of State [174 Ill. 310, 51 N.E. 246], 44 L.R.A. 124; Acts of Twenty-ninth Legislature, 1905, First Called Session Chapter 6.

\* \* \* \* \* \*

"3. May the articles of incorporation of such company provide that the company may do a surety and guarantee business and also insure titles to real estate?

"I answer, yes."

Sub. 37, art. 642, R.C.S.1895, as amended by Acts of 1903, page 197, Vernon's Ann. Civ.St. art. 4969, referred to in the above opinion by the Attorney General, provided, in part, that corporations might be formed for the following purpose: " \* \* \* also to guarantee any contract or undertaking between individuals, or between private corporations, or between individuals or private corporations and the State and municipal corporations or counties or between [private] corporations and individuals \* \* \*."

General Davidson, in his opinion, also referred to Chapter 6, page 427 Acts of 29th Leg., 1905, 1st Called Session, art. 5243e, R.C.S.1895. This law levied a premium tax on "Every \* \* \* title \* \* \* company \* \* \* and all other insurance companies doing business in this State \* \* \*."

The principal business of the Title Company has been title insurance, only a few surety bonds having been written by it and from the date of its incorporation to and including the year 1928, the Title Company has under art. 5243e, R.C.S.1895, and art. 7064, R.C.S.1925, paid gross premium taxes upon the title insurance, mortgage guaranty and surety bond business.

From 1929 to the amendment of art. 7064 in 1945, the Title Company paid no premium taxes and none were demanded of it. It did, during such time, pay franchise taxes which were accepted by the State without objection.

In our opinion the statute authorizing corporations to be formed " \* \* \* to guarantee any contract or undertaking between individuals \* \* \*," was broad enough to include incorporation for the purpose of insuring titles to real estate. The basis of title insurance, as we know

it, is a contract or undertaking between parties involving the transfer, lease or incumbrance of real estate. It is for the purpose of guaranteeing title to the subject matter of these contracts or undertakings that insurance is procured. Insurance which guarantees the existence or condition of the subject matter of a contract or undertaking certainly guarantees the contract or undertaking itself.

This construction is fortified by (a) the fact that the State, when this charter was granted, recognized title insurance companies for the purpose of subjecting them to a gross premium tax, and (b) the long period of time during which state officials and departments have acquiesced in the legality of the Title Company's organization, its method of doing business and payment of taxes.

From 1906 to 1929, 23 years, the Title Company paid, and the State accepted, gross premium taxes on its title insurance business which the State now, some 43 years after the payments commenced, says the company had no authority to transact.

In 1929, after the enactment of art. 1302a the Title Company complied with all requirements of the statute, including the onerous provision as to deposits and investments, and began payment of franchise taxes as required by Sec. 7 of the Act.

No concealment or misstatement has ever been made by the Title Company to any of the various state officials charged with the duty of examining the various reports made by the Title Company, issuing certificates of authority to it and collecting taxes from it, and with knowledge of all the facts these officials have, until this cross action was filed, construed the law in accordance with the opinion of Attorney General Davidson, and concurred in by us. The statutes construed by Attorney General Davidson are at least of doubtful meaning and hence the long standing departmental construction may be resorted to in determining their proper interpretation. Lockhart v. American United Life Ins. Co., Tex.Civ.App., Austin, 181 S.W.2d 607, Writ Ref.

Involved, but not briefed, is the question of the State's right to recover, on its cross action, the sum of $113.42, being the amount of premium taxes on the surety bond business done by the Title Company from 1929 to 1945. We do not believe that Sec. 7 of the Title Guaranty Act of 1929, art. 1302a, V.A.C.S., can be construed as exempting the Title Company from the payment of such taxes on its surety bond business, and the judgment of the trial court will be reformed so as to allow recovery of this item.

As reformed the judgment of the trial court is affirmed.

Reformed and affirmed.