

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

August 13, 1958

Hon. William A. Harrison      Opinion No. WW-492
Commissioner of Insurance
State Board of Insurance    Re:  Question concerning in-
Austin 14, Texas               vestments of life insurance
                                  companies under Article
                                  3.39, Sections 6, 7 and
Dear Mr. Harrison:           8, and related questions.

        The first question presented in your letter
under date of May 7, 1958, involves the proper con-
struction of Section 6, Article 3.39 of the Insurance
Code. This section deals generally with the investments
by a life insurance company in the shares or share accounts
of building and loan associations and federal savings
and loan associations. In order to get a complete and
comprehensive picture of the type of _funds_ which may be
invested in shares or share accounts, and to facilitate
the construction of Article 3.39 so as to give each section
contained therein its full and complete meaning, it seems
wise to interpret the entire article (3.39) regarding
investments in shares and share accounts. We are here
dealing with these various types of funds: (1) Capital,
(2) surplus, (3) contingency funds over and above the a-
mount required for policy reserves and (4) the policy re-
serves themselves.

        Section 1 of Article 3.39 is the first place
wherein express mention is made of investments in shares
and share accounts.

        "A life insurance company organized under
    the laws of this State may invest in or loan
    upon the following securities, and none other,
    viz: (1) It may invest _any of its funds and_
    _accumulations_ in ...shares or share accounts
    _as authorized_ in Section 1, page 76, Acts 1939,
    46th Legislature; ... or in shares or share
    accounts as authorized in Chapter 534, page
    966, Acts 1949, 51st Legislature; ..."
    (Emphasis ours)

The references above are both to Article 881a, Section 24, which states:

"Any county, or any political subdivision of any county, any school district, city or town in this State as well as any Texas corporation, including any insurance company organized under the laws of this State, or any insurance company doing business in this State under a permit, may invest any of its funds in the shares or share accounts of any building and loan association organized under the laws of this State, ..." (Emphasis ours)

Up until 1951, there had been no expressed reference in the Insurance Code to the Building and Loan Act (Article 881a). In 1951 the Legislature made abudantly clear its intention as to the investment of "any of the funds or accumulations" of a life insurance company in the shares or share accounts of "any building and loan association". Thus was intended a broad delegation of investment power in this type of security.

Now in the light of Section 1, what is the proper construction of Sections 4 and 6 of Article 3.39? It must here be reiterated the importance of distinguishing between the types of funds to be invested. Section 4 applies only to the investment of capital, surplus, and contingency funds over the amount required for policy reserves. The statute says, as to these, that a life insurance company

"...shall not invest in nor take as collateral security for any loan its own capital stock nor more than ten per cent (10%) of the amount of its capital, surplus, and contingency funds in the stock of any one corporation. ..."

By no stretch of interpretation could this provision be said to limit a life insurance company to a total invest- ment of ten percent in shares and share accounts. The phrase- ology of Section 4 places only a restriction on the investment of ten percent of the amount of the capital, surplus, and contingency funds in the stock of any one corporation and not the stock of all corporations in which investments may be made.

This brings us finally to the proper interpretation of Section 6 in light of the previous Section 4. First, it will be noted that contained in the last sentence of Section 6 is this statement:

"The investment powers conferred by this Section 6 are in addition to those conferred by Section 4 of this article and are not to be construed as restricting the powers already granted by said Section 4, and this Section 6 and the powers conferred herein are cumulative with respect to the said Section 4 and the powers conferred therein."

This is taken to mean that the provisions of Section 6 will not apply to an investment in a savings and loan pursuant to Section 4.

Remembering the wording in Section 1, that an insurance company "may invest any of its funds and accumulations"; and likewise referring again to Section 6 which says:

"...provided, however, that under this Section 6, and except as authorized in Section 4 of this article, no more than five (5%) per cent of the admitted assets of the insurance company making the investment ... and no such investment shall exceed twenty (20%) per cent of the total outstanding shares of any such individual building and loan association, savings and loan association, or stock of such bank. ..."

It is obvious that to interpret Section 6 so as to limit the total investment in all building and loan shares and share accounts to five percent would be to render meaningless the words "any of its funds" as used in Section 1. So that import may be given to both sections, the better construction is that Section 6 gives power to invest all funds, other than capital, surplus, and contingency funds above the amount required for policy reserves (which are covered in Section 4) in the shares and share accounts of building and loan associations, but limited to five percent in any one company. The proviso of no more than five percent of the admitted assets refers to "the investment" in a single association, not to all such investments in a number of associations. In the conjunctive proviso, it is clear that the Legislature is setting up the restriction

as to a single association or bank for it is stated "of any such individual association".

Thus, in order to fully encompass the meaning of the entire statute relating to investments in shares and share accounts, it is the considered opinion of this department that the investments of capital, surplus, and contingency funds over the amount required for policy reserves are controlled by Section 4 of Article 3.39; while the remaining funds to be invested are controlled by Section 6 of the same article. Further, that the five percent requirement in Section 6 relates to the amount of funds which may be invested in any one company, and does not limit the total investment in this particular type of security.

In construing any statute which is as ambiguous and uncertain as this one obviously is, the departmental construction is oftentimes helpful and of probative weight as an aid to interpretation. The departmental history of Section 6 of Article 3.39 is varied and uncertain. It appears from a preliminary inquiry that for a number of years, prior to February 6, 1956, that the investigators for the Insurance Department, in their examinations, were prone to admit investments in various shares and share accounts of building and loan associations in the calculations of the assets of the company being examined. It appears that their major concern was whether or not the investment was $10,000.00 or less so as to be covered by government guaranty. This was more of a tolerance than an affirmative approval, yet this seems to carry some probative weight as to the attitude of the department with regard to these investments.

On February 6, 1956, came the first written statement as to the departmental attitude regarding Article 3.39. This was not a complete pronouncement of departmental intention, yet it is probative for the determination of the then existing attitude.

"This directive is issue for the purpose of advising the procedure to be used in testing all investments of mutual assessment life companies. ...

"Section 6. Stocks of insured building and loan associations, insured Federal savings and loan associations and stocks of state and

national banks - limited to 5% of the admitted assets of the insurance company in _any one security_. (Emphasis ours)

"Section 7. Debentures of qualified solvent public utility corporations - limited to 5% of the admitted assets of the insurance company in _any one_ security. (Emphasis ours)

"Section 8. Preferred stock of qualified solvent public utility corporations - limited to 2½% of the admitted assets of the insurance company in _any one_ security." (Emphasis ours)

This attitude prevailed until the order of the Commissioner under date of February 25, 1958, was issued. This order states the present position of the department as follows:

"You are hereby informed that the directive of February 6, 1956, is amended as follows:

"1. It is the opinion of this office that Section 6, Article 3.39 of the Insurance Code limits the _total_ insurance company investments in _any or all of_ the above described securities to five per cent of the insurance company's admitted assets and _not_ to such amount in _any one_ security. In other words, investment of mortuary or relief funds in the shares or share accounts of insured building and loan associations and savings and loan associations plus investments in capital stock of state and national banks in the aggregate may not _total_ more than five per cent of the insurance company's admitted assets.

"2. Under the provisions of Section 7, Article 3.39, the _total_ investment of mortuary or relief funds in debentures of qualified solvent public utility corporations is limited to five per cent of the insurance company's admitted assets.

"3. Section 8, Article 3.39, limits the _total_ investment of mortuary or relief funds in the preferred stock of qualified solvent public utility corporations to 2½ per cent of the insurance company's admitted assets."

In determining which departmental construction is valid we are confronted with the following: The present attitude is most recent in duration while the prior attitude was more of a tolerant one than an active statement of policy. However, departmental construction is made up of various commodities - actions of officers in administering the act, tolerance of various practices and actions of those controlled thereunder, as well as explicit statements of policy. In expressing an opinion of this department, the same aids to interpretation are available for the proper construction of the statute and the determination of the correct legislative intent. It would thus appear that the Attorney General's office, in construing a statute, can utilize one of the longstanding aids to interpretation, meaning the departmental construction by the agency charged with the administration of the act. "When statutes construed by the Attorney General are at least of doubtful meaning, longstanding departmental construction may be resorted to in determining their proper interpretation." Dallas Title Guaranty Company v. Insurance Commissioners, 224 S.W.2d 332 (Civ.App. 1949, rehearing den., error ref.). Also see Lower Nueces River Water Supply District v. Cartwright, 274 S.W.2d 199 (Civ.App. 1954, rehearing den., error ref. n.r.e.).

It will be noted here that the departmental construction of the statute in question previous to the current attitude of the Commissioner of Insurance has been in conformity with the conclusions reached above. We feel that absent any abuse of discretion on the part of the administrative agency charged with the enforcement of a particular act, that that agency's interpretation should be controlling where a statute is ambiguous or at best uncertain. We feel that the previous departmental construction has been neither abusive nor unreasonable and find that, in line with the interpretation enumerated above, this departmental construction adds considerably to the weight of the conclusions reached herein.

Your next inquiry involves the construction of Section 7 of Article 3.39 which states in pertinent parts:

"It may invest any of its funds and accumulations in the debentures of any solvent public utility corporation...; but in no event shall the amount of such investment in debentures under this subdivision exceed five (5%) per cent of the admitted assets of the insurance company making the investment."

The quoted portion of Section 7 indicates an authorization to invest "any of its funds" in the first portion thereof and later appears to limit that otherwise general permissive language by the use of the phrase "such investment" in the latter part of the section. This ambiguous situation in the statute calls for clear interpretation and construction. The only difference between the language in Section 7 and the language in Section 6 is that the entire statement regarding this particular type of investment is found in one section, without reference to another section and statute, as is the case in Section 6. It would thus appear that the same type of analysis is applicable to Section 7 as was discussed in the preceding Section 6; namely, - to give meaning to both parts of the section it is mandatory that the percentage requirement refer only to the investment in one particular company and not refer to the total authorization for this particular type of investment.

In attempting to find the departmental construction of this particular section of the statute, we look to your opinion request wherein is stated:

"It has heretofore been the departmental construction of this statute that a life insurance company could invest up to five (5%) percent of its admitted assets in the debentures of any public utility corporation without limit as to the total overall investment in such debentures in a number of public utility corporations. In other words, a life insurance company could invest 5% of its admitted assets in the debentures of ABC Public Utility Corporation, 5% of its admitted assets in the debentures of DEF Public Utility Corporation, and 5% of its admitted assets in the debentures of XYZ Public Utility Corporation."

We feel that this construction placed by your department on this apparently ambiguous or at best uncertain statute is to be given great weight in considering the proper interpretation of same. Absent any clear showing of abuse in the departmental construction, we feel that the departmental construction should be controlling, and so hold in this case.

The last question raised by your recent inquiry involves Section 8 of Article 3.39 which reads in part:

> "It may invest any of its funds and
> accumulations in the preferred stock of any
> solvent public utility corporation..., but in
> no event shall the amount of such investment
> in preferred stock under this subdivision
> exceed two and one-half ($2\frac{1}{2}\%$) per cent of the
> admitted assets of the insurance company making
> the investment."

The language here is identical in pertinent parts to the language in Section 7. Consequently, the interpretation of Section 7 would likewise apply to Section 8; namely, that the statute being ambiguous or at best uncertain, the departmental construction of this section should be looked to for the proper interpretation of the statute. Absent any clear abuse in this construction it should and is here declared controlling as to the legislative intent embraced therein. Thus, it would appear that in Section 8 a life insurance company could invest any of its funds and accumulations in the preferred stock of any solvent public utility corporation; this meaning that there should be no limit on the number of companies in whose stock investments are made, but that the two and one-half ($2\frac{1}{2}\%$) per cent should apply to the amount of investment in any one corporation. Preliminary investigation discloses that this has been the departmental construction for a number of years.

A word of clarification seems appropriate here. The opinion has been written addressed to inquiries involving Sections 6, 7 and 8. This is in no way to be construed as limiting or lessening the effect of Section 9 of Article 3.39, wherein requirements are made for preservation of more liquid assets.

## SUMMARY

Section 1 of Article 3.39 of the Insurance Code provides for investments of "any and all funds and accumulations". This is modified by a 10% limit in Section 4 on the investment of capital, surplus, and contingency funds over and above amount required for policy reserves in the shares and share accounts of any one corporation.

The investment of the remaining funds is provided for in Section 6. The percentage requirement in Section 6 refers to the amount which may be invested in the shares and share accounts of any one corporation and is no limit on the total investment in this type of security.

Section 7 of Article 3.39 authorizes the investment of any of the funds and accumulations of a life insurance company in the debentures of any solvent public utility corporation. The five (5%) per cent requirement enumerated therein refers to the investment in any one public utility corporation. This does not refer to the total investment in this type of security.

Section 8 of Article 3.39 authorizes a life insurance company to invest any of its funds and accumulations in the preferred stock of any solvent public utility corporation. The two and one-half (2½%) per cent requirement enumerated therein refers to the investment in any one public utility corporation. This does not refer to the total investment of this type of security.

Nothing in the above is to be construed as limiting the effect of Section 9 of Article 3.39.

CDD:ph

APPROVED:

OPINION COMMITTEE:

Geo. P. Blackburn, Chairman

J. Arthur Sandlin
Wallace P. Finfrock
Jay Howell

REVIEWED FOR THE ATTORNEY GENERAL
BY:
    W. V. Geppert

Very truly yours,

WILL WILSON
Attorney General of Texas

By C. Dean Davis
C. Dean Davis
Assistant