

# THE ATTORNEY GENERAL
## OF TEXAS

April 14, 1987

JIM MATTOX
ATTORNEY GENERAL

Mr. F. E. Williams
Chambers County Auditor
P. O. Box 910
Anahuac, Texas    77514

Opinion No. JM-677

Re: Calculation of maximum tax attributable to the road and bridge fund

Dear Mr. Williams:

Chapter 26 of the Tax Code sets forth the method by which each taxing unit must calculate an "effective tax rate" and the procedures that each taxing unit must follow in adopting a tax rate. The "effective tax rate" is the tax rate that will produce both the revenue necessary to satisfy the taxing unit's debt payment obligations for the year in which the rate is calculated and the same amount of operating revenue levied on properties taxed in the previous year and taxable in the current year. See Attorney General Opinion MW-495 (1982). We understand you to ask three questions about the calculation of the effective tax rate for a county. We will answer each of your questions in turn.

Generally, the total county tax rate will result from the tax rates set for three different property taxes.[1] Article VIII, sections 1-a and 9 of the Texas Constitution impose a ceiling on each individual rate and provide that the total rate cannot exceed $1.25/$100 valuation. The three individual taxes are: (1) the fund for farm-to-market road/flood control (lateral road fund), with a rate ceiling of $.30/$100 valuation (section 1-a); (2) the general fund, the permanent improvement fund, the road and bridge fund, and the jury fund, with a rate ceiling of $.80/$100 valuation (section 9); and (3) the fund for the further maintenance of public roads, with a  rate  ceiling  of

---

1. We note that other statutory and constitutional provisions permit counties to levy additional property taxes in certain instances, e.g., for jails, courthouses, sea wall construction, fire fighting, and other special purposes. For convenience, we are limiting our answer to the first question to the three most widely imposed constitutional taxes. If a county levies any of these additional property taxes, the assessor calculates an effective tax rate for each additional tax under the reasoning we adopt herein and adds it to the county's total effective rate.

$.15/$100 valuation (section 9). We understand you to ask first whether the tax rate rollback election provisions set forth in section 26.07 of the Tax Code may be invoked when the increase in either the general fund, the permanent improvement fund, the road and bridge fund, and the jury fund component of the tax rate exceeds the effective tax rate for that fund by eight percent or more or whether the tax rate rollback election provisions can be invoked only when the total county tax rate exceeds the total county effective tax rate by eight percent or more. For two reasons, we conclude that section 26.07 of the Tax Code may be invoked only when the total county tax rate exceeds the total county effective tax rate by eight percent or more.

First, courts generally will confer great weight to an agency's interpretation of a statute, unless it is obviously contrary to the statute's clear and unambiguous meaning. Teacher Retirement System v. Duckworth, 260 S.W.2d 632, 636 (Tex. Civ. App. - Fort Worth 1953), aff'd, 264 S.W.2d 98 (Tex. 1954); Pacific Employers Insurance Co. v. Brannon, 242 S.W.2d 185, 189 (Tex. 1951); Dallas Title and Guaranty Co. v. Board of Insurance Commissioners, 224 S.W.2d 332, 336 (Tex. Civ. App. - Austin 1949, writ ref'd). The contemporaneous construction of a statute by those charged with the responsibility of its administration will be respected, especially when the construction has been sanctioned by long acquiescence. Stanford v. Butler, 181 S.W.2d 269, 273 (Tex. 1944). The State Property Tax Board has always construed sections 26.05 and 26.07 of the Tax Code to require that each component of the tax rate be calculated as an independent rate and then added together for a total rate.

Second, the clear terms of the Tax Code provisions require that the eight percent tax rate increase triggering the tax rate rollback election apply to the county's effective rate, not to the effective rate of each component of a county's rate. Section 26.04(d) of the Tax Code provides in pertinent part:

> The designated officer or employee shall calculate the tax rate that if applied to the total taxable value submitted to the governing body less the taxable value of new property would impose the amount of property taxes determined as provided by Subsection (c) of this section [which essentially determines the amount of operating revenue levied on properties taxed in the previous year and taxable in the current year]. . . . (Emphasis added).

See also Tax Code §26.042 (governing calculation of effective tax rate in a county imposing a sales and use tax).

Section 26.05 of the Tax Code provides the following in pertinent part:

> (a)  By September 1 or as soon thereafter as practicable, the governing body of each taxing unit shall adopt a tax rate for the current tax year and shall notify the assessor for the unit of the rate adopted.  The tax rate consists of two components, each of which must be approved separately.  The components are:
>
>> (1)  the rate that, if applied to the total taxable value, will impose the amount of taxes needed to pay the unit's debt service as described by Section 26.04(e)(3) of this code; and
>>
>> (2)  the rate that, if applied to the total taxable value, will impose the amount of taxes needed to fund maintenance and operation expenditures of the unit for the next year.
>
> (b)  a taxing unit may not impose property taxes in any year until the governing body has adopted a tax rate for that year, and the annual tax rate must be set by ordinance, resolution or order, depending on the method prescribed by law for adoption of a law by the governing body. . . .
>
> (c)  The governing body may not adopt a tax rate that exceeds the tax rate calculated as provided by Section 26.04 of this code by more than three percent until it has held a public hearing on the proposed increase and has otherwise complied with Section 26.06 of this code.  The governing body of a taxing unit shall reduce a tax rate set by law or by vote of the electorate to the rate calculated as provided by Section 26.04 of this code and may not adopt a higher rate unless it first complies with Section 26.06 of this code.  (Emphasis added).

And finally, section 26.07 of the Tax Code sets forth the procedures that must be followed in order to conduct a tax rate rollback election to repeal the rate increase.  The section provides in pertinent part:

> (a)  If the governing body of a taxing unit other than a school district adopts a tax rate that exceeds the rate calculated as provided by

> Section 26.04 of this code by more than eight
> percent, the qualified voters of the taxing unit
> by petition may require that an election be held
> to determine whether or not to reduce <u>the tax</u>
> <u>rate adopted for the current year to a rate</u> that
> exceeds the rate calculated as provided by
> Section 26.04 of this code by only eight percent.
> (Emphasis added).

A reading of chapter 26, as a whole, indicates that the tax rate rollback election provisions of section 26.07 may be invoked only in an instance in which the <u>total</u> tax rate adopted exceeds the <u>total</u> effective tax rate by eight percent or more.  If the legislature had intended that a county's component rates individually be limited to the three percent-eight percent rate increase limitations, it could easily have so provided.  But it did not.  Because we are required to give effect to the evident intent of the legislature, <u>Bernard Hanyard Enterprises, Inc. v. McBeath</u>, 663 S.W.2d 639, 643 (Tex. App. - Austin 1983, writ ref'd n.r.e.); <u>Chemical Bank v. Commercial Industries Service Co.</u>, 662 S.W.2d 802, 804 (Tex. App. - Houston [14th Dist.] 1983), <u>writ ref'd n.r.e.</u>, 668 S.W.2d 336 (Tex. 1984), we are compelled to conclude that the tax rate rollback election provisions set forth in section 26.07 may be invoked only when the total tax rate adopted pursuant to section 26.05 of the code exceeds the total effective tax rate as calculated by section 26.04 by eight percent or more.

We understand your next question to be whether the construction that we have adopted in answer to your first question permits, in effect, the "transfer" to another fund of tax money that must be used only for purposes authorized by the qualified voters of the county in the first election permitting the imposition of the tax.  Our answer is that it does not.  Your concern apparently arises from the language contained in the relevant constitutional provisions authorizing the imposition of the taxes at issue.

Article VIII, section 1-a, of the Texas Constitution provides the following in pertinent part:

> Sec. 1-a.  From and after January 1, 1951, no
> State ad valorem tax shall be levied upon any
> property within this State for general revenue
> purposes.  From and after January 1, 1951, the
> several counties of the State are authorized to
> levy ad valorem taxes upon all property within
> their respective boundaries for county purposes,
> except the first Three Thousand Dollars ($3,000)
> value of residential homesteads of married or
> unmarried adults, male or female, including those
> living alone, not to exceed thirty cents (30¢) on
> each One Hundred Dollars ($100) valuation, in

addition to all other ad valorem taxes authorized by the Constitution of this State, provided the revenue derived therefrom shall be used for construction and maintenance of Farm to Market Roads or for Flood Control, except as herein otherwise provided. (Emphasis added).

Article VIII, section 9, of the Texas Constitution sets forth the following:

Sec. 9. The State tax on property, exclusive of the tax necessary to pay the public debt, and of the taxes provided for the benefit of the public free schools, shall never exceed Thirty-five Cents (35¢) on the One Hundred Dollars ($100) valuation; and no county, city or town shall levy a tax rate in excess of Eighty Cents (80¢) on the One Hundred Dollars ($100) valuation in any one (1) year for general fund, permanent improvement fund, road and bridge fund and jury fund purposes; provided further that at the time the Commissioners Court meets to levy the annual tax rate for each county it shall levy whatever tax rate may be needed for the four (4) constitutional purposes; namely, general fund, permanent improvement fund, road and bridge fund and jury fund so long as the Court does not impair any outstanding bonds or other obligations and so long as the total of the foregoing tax levies does not exceed Eighty Cents (80¢) on the One Hundred Dollars ($100) valuation in any one (1) year. Once the Court has levied the annual tax rate, the same shall remain in force and effect during that taxable year; and the Legislature may also authorize an additional annual ad valorem tax to be levied and collected for the further maintenance of the public roads; provided, that a majority of the qualified property taxpaying voters of the county voting at an election to be held for that purpose shall vote such tax, not to exceed Fifteen Cents (15¢) on the One Hundred Dollars ($100) valuation of the property subject to taxation in such county. Any county may put all tax money collected by the county into one general fund, without regard to the purpose or source of each tax. And the Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws. This Section shall not be construed as a limitation of powers delegated

> to counties, cities or towns by any other Section
> or Sections of this Constitution. (Emphasis
> added).

The underscored sentence of article VIII, section 9, was added by a constitutional amendment in 1967. Acts 1967, 60th Leg., H.J.R. No. 3, at 2979. Prior to the 1967 amendment it was well established that the general fund, permanent improvement fund, road and bridge fund, and jury fund, the four so-called "constitutional funds" of article VIII, section 9, could not be commingled or used for purposes other than that for which each was levied. See First State Bank and Trust Company of Rio Grande City v. Starr County, 306 S.W.2d 246 (Tex. Civ. App. - San Antonio 1957, no writ); Carroll v. Williams, 202 S.W.2d 504 (Tex. 1918); Attorney General Opinion Nos. O-6948 (1945); O-5422 (1943); O-4763 (1942). After the adoption of the 1967 amendment, the courts and this office consistently construed the amendment to permit commingling or consolidation of the article VIII, section 9, funds, Lewis v. Nacogdoches County, 461 S.W.2d 514 (Tex. Civ. App. - Tyler 1970, no writ); Attorney General Opinion Nos. H-530 (1975); H-194 (1974); M-1250, M-1195 (1972); M-892 (1971); M-369 (1969); M-207 (1968), but not to permit the commingling or consolidation of any of the article VIII, section 9, funds with the article VIII, section 1-a fund. Attorney General Opinion Nos. H-530 (1975); M-1250 (1972).

The matter of commingling funds is entirely separate from the matter of determining the effective tax rate. As indicated, the county may raise the effective tax rate by eight percent without triggering the rollback election provisions. There is no requirement, however, that any tax increase be apportioned among the funds for which taxes are raised. All or none of the increase may go to the lateral road fund. Once the taxes are assessed and collected for the lateral road fund, however, that money may not be commingled with the other funds.

Your final question is about the effect of the adoption of article VIII, section 21, of the Texas Constitution on the tax rate ceilings set forth in article VIII, section 1-a and 9. Article VIII, section 21 provides the following:

> Sec. 21. (a) Subject to any exceptions pre-
> scribed by general law, the total amount of
> property taxes imposed by a political subdivision
> in any year may not exceed the total amount of
> property taxes imposed by that subdivision in the
> preceding year unless the governing body of the
> subdivision gives notice of its intent to consider
> an increase in taxes and holds a public hearing on
> the proposed increase before it increases those
> total taxes. The legislature shall prescribe by
> law the form, content, timing, and methods of

giving the notice and the rules for the conduct of the hearing.

(b) In calculating the total amount of taxes imposed in the current year for the purposes of Subsection (a) of this section, the taxes on property in territory added to the political subdivision since the preceding year and on new improvements that were not taxable in the preceding year are excluded. In calculating the total amount of taxes imposed in the preceding year for the purposes of Subsection (a) of this section, the taxes imposed on real property that is not taxable by the subdivision in the current year are excluded.

(c) The legislature by general law shall require that, subject to reasonable exceptions, a property owner be given notice of a revaluation of his property and a reasonable estimate of the amount of taxes that would be imposed on his property if the total amount of property taxes for the subdivision were not increased according to any law enacted pursuant to Subsection (a) of this section. The notice must be given before the procedures required in Subsection (a) are instituted. (Emphasis added).

The "general law" required by article VIII, section 21 (or rather the "exceptions" to the specific formula calculations set forth therein) is the effective tax rate calculation detailed in section 26.04 of the Tax Code. See Attorney General Opinion MW-495 (1982). Your concern apparently arises from the recent decline in the value of real property in Texas. When article VIII, section 21, of the Texas Constitution and its companion statute, now-repealed article 7244c, V.T.C.S. (the predecessor statute to section 26.04 of the Tax Code), were enacted in 1978, real property valuations in Texas were rising. As a result, the effective tax rates generally dropped from year to year. A simple example will illustrate (for purposes of brevity, we will discuss only the maintenance and operation component of the tax rate). If in 1978 a taxing unit's tax rate was $1.50/$100 valuation, with the taxable property on the tax roll having an appraised value of $10 million, the same taxing unit's effective tax in 1979, after a reappraisal that increased the appraised value of taxable property on the tax roll to $20 million, would be $.75/$100, i.e. the rate that, when applied to the property taxed last year and taxed this year at this year's appraised value, will produce the same amount of operating revenue produced last year. Obviously, when the appraised value of real property drops from one year to the next, the effective tax rate will necessarily rise. In those counties that suffer significant

reductions in appraised value of property on their tax roll, it is conceivable that the effective tax rates of the various components of the county's total tax rate may exceed the constitutionally imposed tax rate ceilings. We understand you to ask whether article VIII, section 21, acts to supercede or impliedly repeal the tax rate ceilings set forth in article VIII, sections 1-a and 9. The answer is "no."

Article VIII, section 21, of the Texas Constitution is a notice provision; neither it nor its statutory counterpart prescribes any maximum tax rates. Together, they only require public notice if any tax rate adopted exceeds a certain calculated tax rate (the effective tax rate) by a specified percent and permit a tax rate rollback election in the event that the adopted rate exceeds the calculated rate by a larger specified percent. The Texas Supreme Court has enunciated the rule that

> [t]he Constitution must be read as a whole, and all amendments thereto must be considered as if every part had been adopted at the same time and as one instrument, and effect must be given to each part of each clause, explained and qualified by every other part. [Citation omitted]. Different sections, amendments, or provisions of a Constitution which relate to the same subject matter should be construed together and considered in the light of each other. [Citations omitted].

Purcell v. Lindsey, 314 S.W.2d 283, 284 (Tex. 1958); see also State v. Clements, 319 S.W.2d 450 (Tex. Civ. App. - Texarkana 1958, writ ref'd). We do not perceive any conflict between the two constitutional provisions. Article VIII, section 21, requires that each taxing unit must calculate an effective tax rate and, if the tax rate that the taxing unit finally adopts exceeds a specified percent, must comply with certain public notice and public meeting requirements. The other two constitutional provisions, article VIII, sections 1-a and 9, authorize the imposition of certain property taxes for certain purposes and impose a tax rate ceiling on each in the event that those taxes are imposed. In this instance, we must construe article VIII, sections 1-a, 9, and 21, of the Texas Constitution together; the tax rate ceilings imposed by article VIII that are applicable to the tax rates that are actually adopted remain in effect.

## S U M M A R Y

The tax rate rollback election procedures set forth in section 26.07 of the Tax Code may be invoked in a county only when the total tax rate adopted by a county exceeds the total effective tax rate by a specified percent; it may not be

invoked when the adopted tax rate of a component of the county's total tax rate exceeds that component's effective tax rate by a specified percent. When the adopted tax rate of a component of the county's total tax rate exceeds that component's effective tax rate, no impermissible "transfer" of tax money occurs. Article VIII, sections 1-a, 9, and 21 of the Texas Constitution should be construed together. In an instance in which the effective tax rate calculated pursuant to article VIII, section 21, of the Texas Constitution and section 26.04 of the Tax Code exceeds the tax rate ceilings set forth in article VIII, sections 1-a and 9, the tax rate ceilings imposed by article VIII that are applicable to the tax rates that are actually adopted, are still in effect.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General