

# THE ATTORNEY GENERAL
## OF TEXAS

April 6, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Stan Schlueter  
Chairman  
Ways and Means Committee  
Texas House of Representatives  
P. O. Box 2910  
Austin, Texas   78769

Opinion No.   JM-667

Re:  Assessment of additional tax under   section   23.55   of   the Property Tax Code, relating to valuation of land used for agricultural purposes

Dear Representative Schlueter:

You inform us that, between 1980 and 1983, a taxpayer's real property was qualified and appraised as "open-space" land pursuant to the provisions of article VIII, section 1-d-1, of the Texas Constitution and subchapter D of chapter 23 of the Tax Code.  In 1983, the appraisal district adopted a different standard regarding the number of acres that must be devoted to agricultural use in order that qualifying land be devoted to agricultural use "to the degree of intensity generally accepted in the area."  As a result, the appraisal district denied the taxpayer's application for "open-space" land valuation for 1983.  The use to which the land was put, i.e., livestock production, has remained the same.  You ask whether a rollback tax may be imposed under section 23.55 of the Tax Code in an instance in which the land fails to qualify for special valuation but is still in agricultural use.  Our answer is "no."

Article VIII, section 1-d-1, of the Texas Constitution sets forth the following:

> Sec. 1-d-1.  (a)  To promote the preservation of open-space land, <u>the legislature shall provide by general law for taxation of open-space land devoted to farm or ranch purposes on the basis of its productive capacity</u> and may provide by general law for taxation of open-space land devoted to timber production on the basis of its productive capacity.  <u>The legislature by general law may provide eligibility limitations under this section and may impose sanctions in furtherance of the taxation policy of this section.</u>
>
> (b)  If a property owner qualifies his land for designation for agricultural use under Section 1-d of this article, the land is subject to the

provisions of Section 1-d for the year in which
the designation is effective and is not subject to
a law enacted under this Section 1-d-1 in that
year. (Emphasis added).

The legislature has made provision for taxation of open-space
land in chapter 23 of the Tax Code. Section 23.01(a) of the Tax Code
states: "Except as otherwise provided by this chapter, all taxable
property is appraised at its market value as of January 1." (Emphasis
added.) See also Tex. Const. art. VIII, §1. Sections 23.51 through
23.57 of the Tax Code govern the appraisal methods and procedures for
the special valuation of "open-space" land. Section 23.51 of the Tax
Code provides the following in pertinent part:

In this subchapter:

(1) 'Qualified open-space land' means land
that is currently devoted principally to agri-
cultural use to the degree of intensity generally
accepted in the area and that has been devoted
principally to agricultural use for five of the
preceding seven years or land that is used
principally as an ecological laboratory by
a public or private college or university.
Qualified open-space land includes all appur-
tenances to the land. For the purposes of this
subdivision, appurtenances to the land means
private roads, dams, reservoirs, water wells,
canals, ditches, terraces, and other reshapings of
the soil, fences, and riparian water rights.
(Emphasis added).

And finally, section 23.55 of the Tax Code provides that a tax
"rollback" be imposed in the event that there be a change of use in
the land that had previously received the special valuation:

§23.55. Change of Use of Land

(a) If the use of land that has been appraised
as provided by this subchapter changes, an addi-
tional tax is imposed on the land equal to the
difference between the taxes imposed on the land
for each of the five years preceding the year in
which the change of use occurs that the land was
appraised as provided by this subchapter and the
tax that would have been imposed had the land been
taxed on the basis of market value in each of
those years, plus interest at an annual rate of
seven percent calculated from the dates on which
the differences would have become due.

(b)  A tax lien attaches to the land on the date the change of use occurs to secure payment of the additional tax and interest imposed by this section and any penalties incurred.  The lien exists in favor of all taxing units for which the additional tax is imposed.

(c)  The additional tax imposed by this section does not apply to a year for which the tax has already been imposed.

(d)  If the change of use applies to only part of a parcel that has been appraised as provided by this subchapter, the additional tax applies only to that part of the parcel and equals the difference between the taxes imposed on that part of the parcel and the taxes that would have been imposed had that part been taxed on the basis of market value.

(e)  The assessor shall prepare and deliver a statement for the additional taxes plus interest as soon as practicable after the change of use occurs.  The taxes and interest are due and become delinquent and incur penalties and interest as provided by law for ad valorem taxes imposed by the taxing unit if not paid before February 1 of the year after the year in which the change of use occurs.

(f)  The sanctions provided by Subsection (a) of this section do not apply if the change of use occurs as a result of a sale for right-of-way or a condemnation.

(g)  If the use of the land changes to a use that qualifies under Subchapter E of this chapter [section 23.71 of the Tax Code governing the appraisal of timber land], the sanctions provided by Subsection (a) of this section do not apply.

(h)  Additional taxes, if any, for a year in which land was designated for agricultural use as provided by Subchapter C of this chapter [section 23.41 of the Tax Code] (or Article VIII, Section 1-d, of the constitution) are determined as provided by that subchapter, and the additional taxes imposed by this section do not apply for that year.

> (1)  The use of land does not change for pur-
> poses of Subsection (a) of this section solely
> because the owner of the land claims it as part of
> his residence homestead for purposes of Section
> 11.13 of this code.  (Emphasis added).

You wish to know whether the section 23.55 rollback tax is imposed in an instance in which there has been no change in use of the land, but the land fails to qualify under section 23.51 of the Tax Code.  For the following two reasons, our answer is "no."

Courts generally will confer great weight to an agency's inter-pretation of a statute, unless it is obviously contrary to the statute's clear and unambiguous meaning.  Teacher Retirement System v. Duckworth, 260 S.W.2d 632 (Tex. Civ. App. - Fort Worth 1953), aff'd, 264 S.W.2d 98 (Tex. 1954); Pacific Employers Insurance Co. v. Brannon, 242 S.W.2d 185 (Tex. 1951); Dallas Title and Guaranty Co. v. Board of Insurance Commissioners, 224 S.W.2d 332 (Tex. Civ. App. - Austin 1949, writ ref'd).  With the attachments that you have submitted with your request, you inform us that the State Property Tax Board has consis-tently interpreted section 23.55 of the Tax Code to require an active change in use -- "some affirmative act by the landowner that takes the land away from its agricultural use" -- in order to trigger the imposition of the rollback tax.  Under the board's construction, no section 23.55 rollback tax is imposed in the situation you describe. The board's construction of section 23.55 of the Tax Code is entitled to respect.  But there is an even more compelling reason for our answer.

The clear terms of section 23.55 provide that a rollback is triggered only if there is a "change of use"; the section does not impose any rollback tax if land merely fails to qualify but is still in "agricultural use."  We are required to interpret section 23.55 of the Tax Code in a way which

> expresses only the will of the makers of the law,
> not forced nor strained, but simply such as the
> words of the law in their plain sense fairly
> sanction and will clearly sustain.

Railroad Commission of Texas v. Miller, 434 S.W.2d 670, 672 (Tex. 1968).

> The language [of the statute] appears to us to be
> plain and unambiguous and its meaning clear and
> obvious.  We can only enforce the statute as
> written and have no right to create or to find an
> ambiguity where none exists in order to call into
> play generally recognized rules which are used as
> aids to the construction of ambiguous statutes.

_Col-Tex Refining Co. v. Railroad Commission of Texas_, 240 S.W.2d 747, 750 (Tex. 1951).  Section 23.51 of the Tax Code provides the following in pertinent part:

> In this subchapter:
>
> . . . .
>
> (2) 'Agricultural use' includes but is not limited to the following activities: cultivating the soil, producing crops for human food, animal feed, or planting seed or for the production of fibers; floriculture, viticulture, and horti-culture; raising or keeping livestock; and planting cover crops or leaving land idle for the purpose of participating in any governmental program or normal crop or livestock rotation procedure. (Emphasis added).

You inform us that the land in question is still in "agricultural use," specifically livestock production; accordingly, we conclude that the rollback tax may not be imposed.

### S U M M A R Y

> In an instance in which a taxpayer's land that has previously qualified for "open-space" land special valuation pursuant to article VIII, section 1-d-1, of the Texas Constitution and subchapter D of chapter 23 of the Tax Code, and that is still in agricultural use but no longer qualifies for special valuation because it is not devoted to agricultural use to the degree of intensity generally accepted in the area, no rollback tax may be imposed under section 23.55 of the Tax Code. The section 23.55 rollback tax is imposed only when there has been a change in use of the land.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General